# Commonwealth *versus* Horner.

Where witnesses are subpœnaed for the prosecution, on two indictments, one of them charging a felony, and the other a misdemeanor, and there is a settlement of the misdemeanor, between the prosecutor and the defendants, whereupon the further prosecution of the indictment for the felony is abandoned, and a verdict of acquittal is rendered; the county is not liable for the costs of the witnesses for the prosecution; it being evident, that the costs were incurred in the prosecution of the misdemeanor, and not of the felony.

Though this court does not ordinarily look into evidence, on writs of error and *certiorari*, yet, if brought up with the record, and submitted by the party complaining of error in the decision of the court below, it will be considered, at his instance, so far as to satisfy the court, that there is no error in the proceedings.

ERROR to the Quarter Sessions of *Westmoreland county.*

This was an appeal from the taxation of costs, on an indictment for larceny against Isaac Horner and Samuel Horner, by Jacob Harrold, the prosecutor.

At November Sessions 1858, two bills of indictment were found against the defendant, at the instance of the same prosecutor, one of them, for conspiracy to cheat, &c., and the other, for larceny. Isaac Horner, one of the defendants, was not arrested.

At the February Sessions 1859, Samuel Horner was tried on the indictment for conspiracy, and convicted; and at the May Sessions following, the verdict was set aside, and a new trial granted. The indictment for larceny was continued over from term to term.

Immediately after the granting of the new trial, a settlement of the charge of conspiracy was effected between the prosecutor and the defendant, on payment by the latter of the sum of $800; whereupon, the further prosecution of the indictment for larceny was abandoned, and a verdict of acquittal was rendered.

[Commonwealth v. Horner.]

The prosecutor thereupon filed a bill of costs for the attendance of witnesses, &c., on the bill for larceny, amounting to $952.16; which, on taxation by the clerk of the court, was reduced to $476.08. From this taxation, an appeal was taken by the county commissioners.

The following testimony was taken on the taxation of costs, and at the instance of the prosecutor, attached to, and sent up with, the record; and was made a part of his paper-book submitted to this court:—

*Jacob Harrold, sworn.*—" I was the prosecutor in this case. The case was settled, day before yesterday, on Wednesday. The terms of the settlement were, that Samuel Horner was to pay $800; don't know to whom. Mr. Cook was the attorney on behalf of the Commonwealth, and he told me, defendant was to pay $800. Mr. Cook told me the conditions of the compromise were, that the defendant was to pay $800; he did not tell me what disposition was to be made of it; he told me on Wednesday, that the witnesses would not be required on Wednesday, after the case was brought up in court. There were but fourteen witnesses in attendance at May Term 1859, on the indictment for felony. I filed no bill of costs in the case of the conspiracy; I can give no reason why the bill of costs was not filed in the conspiracy case. The witnesses named in the bill for November 1858, and February 1859, were subpœnaed in both cases; I had *subpœnas* for each case. I was not present when the compromise was made."

*Cross-examined.*—" The witnesses from Philadelphia, at February Term 1859, attended on the larceny case; only one *subpœna* served on Philadelphia witnesses, at November Term 1858; when I speak of the witnesses being subpœnaed in both cases, I refer to the witnesses I subpœnaed in Allegheny, Fayette, and Westmoreland counties."

*Re-examined in chief.*—" The witnesses from Philadelphia were examined in the conspiracy case, at November 1858 and 1859. I was directed not to file the bill in the conspiracy case, because the witnesses would not come back if a new trial was granted. The reason why I did not file the bill in the conspiracy case was, because it was settled, and we could not recover it off them, and it was no use of filing a bill; the reason was, the conspiracy case was settled, and the costs could not be paid. I regarded it my duty to make out the bill. James B. Kelly, Bennett Lane, David Tintsman, William Snyder, Philip Keller, the three Kepples, Mr. Reed and I understood him to speak for all of them. I was told that if I filed the bill in the conspiracy, it could not be collected from the county, and for that reason I did not do it."

*Cross-examined.*—" When the bill of costs was made out, there was no conversation about the form of the verdicts. I was told

[Commonwealth *v.* Horner.]

the witnesses could not draw double pay; that was one of the principal reasons why I did not file the bill of costs. The larceny case was the longest on hand, and the witnesses attended all the time. Mr. Cook told me he worked hard to put all the costs on Horner he could; Mr. Cook told me that Horner refused to pay the costs or his attorneys for him; Mr. Cook told me he tried hard to settle it, as he could not get the witnesses, and it would accumulate costs in the county; we were not prepared for trial, and would have to ask for a continuance. I knew that Samuel Horner had put away all his property; he had made auctions before February court, and sold us his goods, and was informed he had parted with everything. Mr. Cook advised me to compromise it as soon as possible, to save costs. Neither at the commencement of the prosecutions, nor during their progress, was I informed that the costs would come off the county; as far as I understood, it was carried on in good faith; the bill was filed in good faith.''

*Re-examined.*—" I took out an attachment; I did not execute it; I was expecting the witness Tuesday night; I did not go, because they were negotiating the settlement, and believing they could not be brought on an attachment. The attachment was for Reynolds; he told me he would come if his family was in such a situation as he could come. I told him the case could not be tried without him. I knew from my own knowledge that the county was liable for costs in felony. I always told the witnesses that they would get their costs, that somebody was bound to pay them; I was informed by counsel that the county would be liable to costs; I always had an idea the county would pay the costs in the felony case; I was informed, during the negotiation of compromise, that the county would have to pay the costs of the witnesses. I would have yielded my assent to the settlement without knowing that the county was to pay the costs; knowing that Horner had parted with all the goods, and had no real estate, that I would not recover the costs of him in any event, if convicted, and the county would have to pay the costs. The notes were taken in the name of Anspach & Co., and paid over to me.''

*W. A. Cook, sworn.*—" So far as I know, this bill of costs, as taxed, is correct in all its particulars. I am certain that the Philadelphia witnesses attended each term in the larceny case; they attended the first term before the grand jury; we considered them, so far as we could determine, material to the case. There was no arrangement or conversation had in the commencement or progress of the case, as to the payment of the costs. The compromise referred to in Mr. Harrold's deposition was made chiefly with me; the proposition for it came from the friends, and also from one of the attorneys of Horner & Waltz; on Wednesday,

[Commonwealth *v.* Horner.]

they agreed to give $800, that sum to be applied to the losses and expenses of the eastern merchants, brought about by the conduct of the Horners, and any part that they might see fit, if any, after making their estimate to court; on these terms a settlement was closed. The larceny case was not prepared for trial at the May Term—that is, the Commonwealth was not ready for trial. The $800 was paid in part, and the balance secured by notes; the notes were taken in the name of Anspach, Reid & Co., and passed over to me. The compromise to which I refer was of the conspiracy case, and not of the larceny case; the proposition of settlement made to me by one of the attorneys of Horner, referred to this case, he observing at the time that of course the larceny case must take its course, that we could not settle it; in the same conversation, he said, that he had his doubt, that the verdict of the last court would be set aside, and that Horner was worth nothing, and that the best thing was to settle. He offered $400, which he said he supposed would cover the expenses of the Philadelphia merchants; I informed him that it would not, and added that I thought all or a part of the costs should be paid by Horner. We failed to settle the case. On the next day, at the request of a mutual friend, I submitted a proposition; it was this: that Horner pay the costs and witness fees, and the outlay or expenses of the Philadelphia merchants, or else give us the goods taken from Isaac Horner's store and $1000, and we would pay a part of the costs; this they rejected; finally, the case was settled on these terms: Horner & Waltz to pay $800 to Anspach, Reid & Co., and give the assignee of Kepple the goods identified as his; the $800 to be applied to the attorney's fees of that and other eastern houses, and if any over, to costs, according to the terms of the proposition which I submitted. The docket costs I have arranged with the clerk of the courts. The question was asked, at the time of the settlement, 'What about the larceny case?' I answered, that the prosecution can't settle—we are not prepared for trial, and it is doubtful if we ever can be; my own inclinations, in view of the uncertainty and difficulty of being prepared at any time for trial, and also in view of the costs on the county, which must be greatly increased by circumstances, is to allow it to be disposed of at once. The other counsel, the prosecutor, all concurred in these views of the larceny case; General Foster, aside from his relation to Horner as counsel, approved of them. So far as I can remember, I have given a condensed statement or history of the settlement of the conspiracy case, and a narrative of what took place as respects the larceny case."

The Court of Quarter Sessions, on appeal, decided that this bill of costs should not be allowed, as an entire claim, against the county; but that each witness and claimant should be left to any

[Commonwealth *v.* Horner.]

remedy he might have by law. The prosecutor, thereupon, sued out this writ, and here assigned the same for error.

*W. A. Cook* and *H. P. Laird*, for the prosecutor, cited Commonwealth *v.* Cozens, 1 *Ash.* 265; *Brightly on Costs* 374; Batdorff *v.* Eckert, 3 *Barr* 267; Wayne County *v.* Commonwealth, 2 *Casey* 154.

The opinion of the court was delivered by

WOODWARD, J.—At common law, a defendant indicted for crime, was liable for the costs of prosecution, whether he was convicted or acquitted on the trial, and the law continued to be so in Pennsylvania, until the Act of 20th March 1797 was passed. That act provided, that all costs accruing on bills of indictment, charging a party with any felony, breach of the peace, or other indictable offence, shall, if such party be acquitted by a petit jury on the traverse of the same, be paid out of the county stock by the county in which the prosecution commenced. By subsequent enactments, costs in cases under the grade of felony are to be paid by the county only where the grand jury ignore the bill, or the petit jury acquit the defendant, and expressly impose the costs on the county; leaving the Act of 1797 in operation only in cases of felony.

It is under this enactment, of 1797, that the present attempt is made to charge the county of Westmoreland with a bill of costs, in a case of felony, amounting, as filed, to $952.16, and as taxed by the clerk of the sessions, to $476.08. The reason why we think the court were right in refusing, on appeal, to allow and tax this enormous bill, is, that the costs in question did not accrue in the larceny case. The witnesses, for whose attendance the bill was made out, were brought from Philadelphia, to sustain an indictment against the same party for a misdemeanor, rather than the indictment for larceny.

There is enough before us to convince us of that, and though we do not ordinarily look into evidence on writs of error and *certiorari* to the Quarter Sessions, yet, as the party who brings up this record, has submitted evidence, on which he asks us to charge the county, he has no right to complain if we find in it reasons for refusing to grant what he asks. At his instance, we will look into the case as he has presented it.

At the November Sessions of 1858, two bills of indictment were found against Samuel and Isaac Horner—one for conspiring to cheat their Philadelphia creditors, the other for larceny. Isaac was not arrested. At the February Sessions of 1859, Samuel was tried on the indictment for conspiracy, and convicted; which verdict was set aside, and a new trial granted at the May Sessions of 1859. The indictment for larceny was continued to the

[Commonwealth *v.* Horner.]

February Sessions of 1859, and again to the May Sessions of 1859. At this term (the May Sessions) a settlement of the conspiracy case was effected, after a good deal of negotiation, by the payment, on the part of Horner, of $800, partly in money and partly in notes, which were taken in the names of certain of the Philadelphia creditors.

Immediately after this settlement, a verdict of not guilty was taken in the larceny case, and the bill of costs made out. Harrold, the prosecutor, swears that the reason why he did not file the bill in the conspiracy case was, " because it was settled, and we could not recover it off them, and it was no use of filing a bill. I was told that, if I filed the bill in the conspiracy, it could not be collected from the county, and for that reason, I did not do it."

From Mr. Cook, who appears to have acted as counsel for the creditors, and to have been instrumental in effecting the settlement, we learn that, " the larceny case was not prepared for trial at the May Term—that is, the Commonwealth was not ready for trial." And again, that at the settlement, " the question was asked—What about the larceny case ? I answered, that the prosecution can't settle, we are not prepared for trial, and it is doubtful if we ever can be; my own inclinations in view of the uncertainty and difficulty of being prepared at any time for trial, and also in view of the costs on the county, which must be greatly increased by circumstances, is to allow it to be disposed of at once. The other counsel, the prosecutor, all concurred in these views of the larceny case."

It would have been fortunate for the county, if Mr. Cook's views of the impracticability of sustaining the indictment for larceny, had matured at the November or February Sessions, or at any time before the settlement of the misdemeanor case, for then it would not have been made, what it manifestly became in the sequel, a mere stalking-horse to bear this bill of costs to the county treasury. Though the witnesses were subpœnaed in both cases, it is impossible to doubt, that they were the witnesses to the misdemeanor, and not to the felony. Else, why was not the larceny tried at the first or second term; and why was it finally abandoned for want of witnesses ? And if it was found not to be sustainable, why was it not abandoned sooner; before unnecessary witnesses had been brought three times from Philadelphia ? There may have been a *bonâ fide* intention to prosecute Horner for larceny, or the indictment may have been used as a rod of terror, to force a settlement of the civil claim. We don't undertake to decide how it was; but, that the costs of these witnesses did not accrue on that indictment, is a truth that flashes into our eyes from every part of the record. A verdict of not guilty is the usual attendant of an abandoned prosecution for felony. That

it was abandoned, is almost said in terms by Cook. No other reasonable inference is deducible from what he does say.

The reasons given by the court for not taxing the bill, are not satisfactory to us; but since there was a good legal reason, such as we have indicated, for their refusal, the judgment is to stand affirmed.